**Peter Jones FIELD, Petitioner–Appellee,**

v.

**SHERIFF OF WAKE COUNTY, NORTH CAROLINA; Wake County Probation Office; Attorney General of North Carolina, Respondents–Appellants.**

No. 86–7671.

United States Court of Appeals, Fourth Circuit.

Argued March 4, 1987.

Decided Oct. 23, 1987.

Linda Anne Morris, Associate Atty. Gen., North Carolina Dept. of Justice (Lacy H. Thornburg, Atty. Gen., Isaac T. Avery, III, Sp. Deputy Atty. Gen., Raleigh, N.C., on brief) for respondents-appellants.

Gary Lester Presnell (Presnell & Allen, Raleigh, N.C., on brief) for petitioner-appellee.

Before WIDENER and CHAPMAN, Circuit Judges, and TIMBERS, United States Circuit Judge for the Second Circuit, sitting by designation.

WIDENER, Circuit Judge:

The sheriff of Wake County, North Carolina and the Wake County Probation Office appeal an order of the district court granting Field's petition for a writ of habeas corpus following a determination that the sentencing procedures under North Carolina's Driving While Impaired Statute violated Field's Sixth and Fourteenth Amendment rights. We reverse.

On January 20, 1984, Field was charged with driving while impaired (DWI) in violation of the N.C.G.S. 20–138.1 and failing to stop for a stop sign in violation of N.C.G.S. 20–158. These charges were filed as a result of a two-car collision occurring in Raleigh, North Carolina. Field's pick-up truck ran a stop sign and struck a vehicle being driven by Charles Gardner. Gardner suffered a fractured left knee, torn ligament and tendon damage to the knee, requiring surgery and resulting in permanent partial disability, and a cut to the head, requiring 29 stitches. Gardner's wife Jean was a passenger in the car at the time of the automobile accident. She suffered a blow to the head and a broken nose that required surgery. Following the accident, Field was given an alcohol breath test. The test showed a reading of $^{16}/_{100}$ grams of

alcohol per 210 liters of breath, within North Carolina's statutory definition of driving while impaired.[1]

Field pleaded guilty in the North Carolina state District Court to both driving while impaired and running a stop sign. Pursuant to N.C.G.S. 20–138.1(d) and N.C.G.S. 20–179 [2] the state District Court then

1. N.C.G.S. § 20–138.1 provides in part:

(a) Offense.—A person commits the offense of impaired driving if he drives any vehicle upon any highway, any street, or any public vehicular area within this State:

(1) While under the influence of an impairing substance; or

(2) After having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of 0.10 or more.

. . . . .

(d) Sentencing Hearing and Punishment.— Impaired driving as defined in this section is a misdemeanor. Upon conviction of a defendant of impaired driving, the presiding judge must hold a sentencing hearing and impose punishment in accordance with G.S. 20–179. (1983, c. 435, s. 24)

2. N.C.G.S. 20–179 provides in part:

(a) Sentencing Hearing Required.—After a conviction for impaired driving under G.S. 20–138.1, the judge must hold a sentencing hearing to determine whether there are aggravating or mitigating factors that affect the sentence to be imposed. Before the hearing the prosecutor must make all feasible efforts to secure the defendant's full record of traffic convictions, and must present to the judge that record for consideration in the hearing. Upon request of the defendant, the prosecutor must furnish the defendant or his attorney a copy of the defendant's record of traffic convictions at a reasonable time prior to the introduction of the record into evidence. In addition, the prosecutor must present all other appropriate grossly aggravating and aggravating factors of which he is aware, and the defendant or his attorney may present all appropriate mitigating factors. In every instance in which a valid chemical analysis is made of the defendant, the prosecutor must present evidence of the resulting alcohol concentration.

. . . . .

(c) Determining Existence of Grossly Aggravating Factors.—At the sentencing hearing, based upon the evidence presented at trial and in the hearing, the judge must first determine whether there are any grossly aggravating factors in the case. If the defendant has been convicted of two or more prior offenses involving impaired driving, if the convictions occurred within seven years of the date of the offense for which he is being sentenced, the judge must impose the Level One punishment under subsection (g). The judge must also impose the Level One punishment if he determines that two or more of the following grossly aggravating factors apply:

(1) A single conviction for an offense involving impaired driving, if the conviction occurred within seven years of the date of the offense for which the defendant is being sentenced.

(2) Driving by the defendant while his driver's license was revoked under G.S. 20–28, and the revocation was an impaired driving revocation under G.S. 20–28.2(a).

(3) Serious injury to another person caused by the defendant's impaired driving.

If the judge determines that only one of the above grossly aggravating factors applies, he must impose the Level Two punishment under subsection (h). In imposing a Level One or Two punishment, the judge may consider the aggravating and mitigating factors in subsections (d) and (e) in determining the appropriate sentence. If there are no grossly aggravating factors in the case, the judge must weigh all aggravating and mitigating factors and impose punishment required by subsection (f).

. . . . .

(g) Level One Punishment.—A defendant subject to Level One punishment may be fined up to two thousand dollars ($2,000) and must be sentenced to a term of imprisonment of not less than 14 days and not more than 24 months. The term of imprisonment may be suspended only if a condition of special probation is imposed to require the defendant to serve a term of imprisonment of at least 14 days. If the defendant is placed on probation, the judge must, if required by subsections (1) or (m), impose the conditions relating to treatment and education described in those subsections. The judge may impose any other lawful condition of probation. If the judge does not place on probation a defendant who is otherwise subject to the mandatory assessment and treatment provisions of subsection (m), he must include in the record of the case his reasons for not doing so.

(h) Level Two Punishment.—A defendant subject to Level Two punishment may be fined up to one thousand dollars ($1,000) and must be sentenced to a term of imprisonment of not less than seven days and not more than 12 months. The term of imprisonment may be suspended only if a condition of special probation is imposed to require the defendant to serve a term of imprisonment of at least seven days. If the defendant is placed on probation, the judge must, if required by subsections (l) or (m), impose the conditions relating to treatment and education described in those subsections. The judge may impose any other lawful condition of probation. If the judge does not place on probation a de-

conducted a sentencing hearing and found that Field had caused serious injury as a result of his impaired driving and, having found one of the statutorily enumerated aggravating factors, imposed a level two punishment. Field then appealed to the North Carolina State Superior Court.[3]

Field again pleaded guilty to both the DWI and stop sign charges before the state Superior Court. In that court, he attacked the constitutionality of the sentencing provisions of N.C.G.S. 20–179 as being violative of his rights guaranteed under the Sixth Amendment. A sentencing hearing was held and the judge found as a fact that serious injury was caused to another person because of Field's impaired driving and imposed a level two punishment. The judge imposed a prison term of one year. The execution of the term was suspended for three years, during which time Field was placed on supervised probation in accordance with the statute. He was sentenced to serve seven days in jail, a statutory prerequisite for probation.

Field then appealed to the North Carolina Court of Appeals. That court rejected Field's constitutional argument, concluding that serious injury was not an element of the offense of driving while under the influence but was merely a sentencing factor. *State v. Field*, 75 N.C.App. 647, 331 S.E.2d 221, 222 (N.C.App.1985). The North Carolina Supreme Court denied Field's petition for review. 314 N.C. 671, 337 S.E. 2d 582 (1985).

Field then filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 in the United States District Court for the

fendant who is otherwise subject to the mandatory assessment and treatment provisions of subsection (m), he must include in the record of the case his reasons for not doing so.

(i) Level Three Punishment.—A defendant subject to Level Three punishment may be fined up to five hundred dollars ($500.00) and must be sentenced to a term of imprisonment of not less than 72 hours and not more than six months. The term of imprisonment must be suspended, on the condition that the defendant:

(1) Be imprisoned for a term of at least 72 hours as a condition of special probation; or

(2) Perform community service for a term of at least 72 hours; or

(3) Not operate a motor vehicle for a term of at least 90 days; or

(4) Any combination of these conditions. The judge in his discretion may impose any other lawful condition of probation and, if required by subsections (*l*) or (m) must impose the conditions relating to treatment and education described in those subsections. This subsection does not affect the right of a defendant to elect to serve the suspended sentence of imprisonment as provided in G.S. 15A–1341(c).

(j) Level Four Punishment.—A defendant subject to Level Four punishment may be fined up to two hundred fifty dollars ($250.00) and must be sentenced to a term of imprisonment of not less than 48 hours and not more than 120 days. The term of imprisonment must be suspended, on the condition that the defendant:

(1) Be imprisoned for a term of 48 hours as a condition of special probation; or

(2) Perform community service for a term of 48 hours; or

(3) Not operate a motor vehicle for a term of 60 days; or

(4) Any combination of these conditions. The judge in his discretion may impose any other lawful condition of probation and, if required by subsections (*l*) or (m), must impose the conditions relating to treatment and education described in those subsections. This subsection does not affect the right of a defendant to elect to serve the suspended sentence of imprisonment as provided in G.S. 15A–1341(c).

(k) Level Five Punishment.—A defendant subject to Level Five punishment may be fined up to one hundred dollars ($100.00) and must be sentenced to a term of imprisonment of not less than 24 hours and not more than 60 days. The term of imprisonment must be suspended, on the condition that the defendant:

(1) Be imprisoned for a term of 24 hours as a condition of special probation; or

(2) Perform community service for a term or 24 hours; or

(3) Not operate a motor vehicle for a term of 30 days; or

(4) Any combination of these conditions. The judge may in his discretion impose any other lawful condition of probation and, if required [by] subsections (*l*) or (m), must impose the conditions relating to treatment and education described in those subsections. This subsection does not affect the right of a defendant to elect to serve the suspended sentence of imprisonment as provided in G.S. 15A–1341(c).

3. N.C.G.S. 15A–1431 allows a defendant to appeal such a conviction to the state superior court for a trial de novo before a jury.

Eastern District of North Carolina. The district court granted Field's petition for habeas corpus relief after concluding that the existence of serious injury was an element of the crime charged and not merely a sentencing factor. Therefore, it held Field's constitutional right to a jury trial was violated when that issue was decided by the trial judge instead of a jury.

A state criminal defendant has a constitutional right under the Fourteenth Amendment to a trial by jury in all those cases which, if tried in federal court, would fall within the Sixth Amendment's protections. *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). The due process clause protects a criminal defendant against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). The State, however, is not required to "prove beyond a reasonable doubt every fact, the existence or nonexistence of which it is willing to recognize as an exculpatory or mitigating circumstance affecting the degree of culpability or the severity of the punishment." *McMillan v. Pennsylvania*, 477 U.S. 79, ——, 106 S.Ct. 2411, 2416, 91 L.Ed.2d 67 (1986), quoting *Patterson v. New York*, 432 U.S. 197, 207, 97 S.Ct. 2319, 2325, 53 L.Ed.2d 281 (1977). The State is constitutionally required to prove every element included within the definition of the offense charged. *Patterson*, 432 U.S. at 210, 97 S.Ct. at 2327, *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). But the State is free to define for itself the elements of a crime so long as its definition does not offend some deeply rooted principle of justice. *McMillan*, 477 U.S. at ——, 106 S.Ct. at 2416.

North Carolina has enumerated the elements of DWI to the (1) driving a vehicle; (2) upon any highway, street or public vehicular area within the State; (3) while under the influence of an impairing substance or after having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of .10 or more. N.C.G.S. 20–138.-1(a)(1) and (2). *State v. Denning*, 316 N.C. 523, 342 S.E.2d 855 (1986). The aggravating factors set out in N.C.G.S. 20–179, the state court has held, are sentencing factors, not elements of the offense of DWI. *Denning*, 342 S.E.2d at 857. The jury is responsible for deciding whether or not the defendant is guilty of driving while impaired as defined by § 20–138. The judge then decides the issue of punishment by following the procedure set out in § 20–179.

The district court recognized that the North Carolina Supreme Court had held that the aggravating factors in § 20–179 were sentencing factors to be considered by the judge and not elements of the offense of driving while impaired. *Field*, 654 F.Supp. 1367 at 1370 (E.D.N.C.1986). However, the court did not feel bound by that holding for two principal reasons. First, *Denning* had been decided before the Supreme Court's opinion in *McMillan v. Pennsylvania*, supra. Second, *Denning* was factually inapposite because the aggravating factor present there was a prior conviction for a similar offense within seven years, a fact easily ascertainable and one to which the defendant had previously been accorded a right to a jury trial. *Field*, 654 F.Supp. at 1376. Serious injury is different, the district court said, in four crucial ways: (1) It is unrelated to the defendant's character but instead is a measure of the seriousness of the offense. (2) It is not peculiarly within the defendant's knowledge. (3) It is not readily ascertainable as a matter of record. (4) It had not been the subject of any prior adjudication. *Field*, 654 F.Supp. at 1376.

Because of these distinctions, the court concluded that the aggravating factor of serious injury could not be classified as a sentencing factor but must instead be considered an element of the crime, thus the jury, and not the judge, must adjudicate the issue. It held that Field's constitutional rights under the Sixth and Fourteenth Amendments were violated when the judge, rather than the jury, concluded that serious injury resulted from Field's im-

paired driving. Therefore, the court granted Field's petition for habeas corpus relief. *Field*, 654 F.Supp. at 1377.

In *McMillan*, the Supreme Court was called upon to consider the constitutionality of Pennsylvania's Mandatory Minimum Sentencing Act. The act requires imposition of a mandatory minimum sentence of five years' imprisonment for anyone convicted of certain enumerated felonies if the sentencing judge finds that the defendant "visibly possessed a firearm" during the commission of the offense. The act provides that such finding is not an element of the crime charged, but is a factor to be applied at sentencing. 42 Pa.Cons.Stat. § 9712(b) and (c) (quoted at 477 U.S. at ——, 106 S.Ct. at 2416).

McMillan argued that, despite the statute's language, possession of a firearm was an element of the offense charged and as such must be proved by the prosecution beyond a reasonable doubt as determined by the jury. 477 U.S. at ——, 106 S.Ct. at 2416. The Supreme Court disagreed, upholding Pennsylvania's decision that visible possession of a firearm is not an element of the enumerated offenses.

The Court first noted that the Pennsylvania act neither created an impermissible presumption nor relieved the prosecution of its burden of proving guilt beyond a reasonable doubt. The sentencing act did not enhance the maximum penalty available nor create an additional penalty for the offense charged. It did no more than to limit the court's discretion in sentencing a defendant already convicted of an enumerated crime, for in those situations where the trial court found that the convicted defendant had committed the crime while visibly possessing a firearm the court was required to sentence the defendant to no less than five years. As the Court stated: "[t]he Pennsylvania legislature did not change the definition of any existing of-

fense. It simply took one factor that has always been considered by sentencing courts to bear on punishment—the instrumentality used in committing a violent felony—and dictated the precise weight to be given that factor if the instrumentality is a firearm. Pennsylvania's decision to do so has not transformed against its will a sentencing factor into an 'element' of some hypothetical 'offense'." *McMillan*, 477 U.S. at ——, 106 S.Ct. at 2419.

The Third Circuit, for example, has applied *McMillan* to uphold against constitutional attack the enhanced sentencing of felons' convictions of firearms violations. *United States v. Hawkins*, 811 F.2d 210 (3rd Cir.1987).[4] In *Hawkins*, the court was called upon to review the sentencing scheme for a felon convicted of possession of a firearm. Under 18 U.S.C.App. § 1202(a)'[5] a convicted felon who possesses, receives or transports a firearm can be sentenced to up to two years' imprisonment. Under the same statute, a person who possesses, receives or transports a firearm and who has three prior felony convictions for robbery or burglary[6] must be sentenced to not less than fifteen years' imprisonment.

Hawkins was indicted and convicted of possession of a firearm with a prior felony conviction. The court charged the jury that it must find Hawkins guilty of one felony to convict. At sentencing, the court found that Hawkins had the requisite three prior felony convictions requiring a fifteen year rather than a two year sentence. On appeal, Hawkins argued that the sentencing provisions added a new and separate element to the crime of possession of a firearm. The court disagreed, concluding that § 1202 was merely a sentence enhancing statute and as such need not be decided by the jury. *Hawkins*, 811 F.2d at 217–218. A review of the legislative history convinced the court that § 1202 was not

---

**4.** In accord with *Hawkins* is *United States v. Gregg*, 803 F.2d 568 (10th Cir.1986). Contra: *United States v. Davis*, 801 F.2d 754 (5th Cir. 1986).

**5.** 18 U.S.C.App. § 1202 has since been repealed. Its provisions now appear in 18 U.S.C. § 924.

**6.** Under 18 U.S.C. § 924(e)(1) the enumerated prior felonies have been expanded to include violent felonies and serious drug offenses.

intended to alter the elements of the underlying offense. Relying upon *McMillan,* the court then held that no due process issue of merit was presented since the challenged provision was a sentencing factor only.

We agree with the Third and Tenth Circuits. Prior to *McMillan,* this court had upheld the enhanced sentencing provisions for those defendants found by the court to be dangerous special offenders under 18 U.S.C. § 3575. *United States v. Williamson,* 567 F.2d 610 (4th Cir.1977). Under that statute, the trial judge can enhance the sentence given to a convicted felon if certain conditions are found to be present, such as a finding that the defendant is a repeat offender. Williamson had been sentenced to eight years' imprisonment under § 3575. Absent that provision, he could have been sentenced to no more than two years. We rejected Williamson's claim that § 3575 created an additional element of crime charged. We find nothing in *McMillan* to invalidate that conclusion and find *Williamson* persuasive authority to support our decision here.

We think the various statutes under review in *McMillan, Hawkins, Gregg,* and *Williamson* are analogous, to a greater or lesser extent, to the North Carolina statute under review here. We recognize that the statute considered in *McMillan* did not increase the maximum penalty available as N.C.G.S. § 20–179 does. But that fact alone did not form the basis for the Court's decision.[7] Other equally important factors

considered by the Court included its findings that the Pennsylvania statute did not create any impermissible presumptions nor did it relieve the prosecution of its burden of proving guilt. *McMillan,* 477 U.S. at ——, 106 S.Ct. at 2416. The Pennsylvania legislature had not changed the definitions of any of the affected felonies. It merely altered the sentences to be administered. The Court found no need to go beyond the state legislature's definition of the elements of the crimes affected. *McMillan,* 477 U.S. at ——, 106 S.Ct. at 2416.

■ A review of these remaining factors convince us that the North Carolina legislature did not overstep the bounds of the Constitution in the sentencing scheme of N.C.G.S. 20–179. No impermissible presumptions were created. The prosecutor was not relieved of proving guilt beyond a reasonable doubt. The definition of the crime of DWI was not altered. While it is true that the legislature combined the offenses of driving under the influence of alcohol, N.C.G.S. § 20–138 [8] and driving under the influence of drugs N.C.G.S. § 20–139 [9] into the single offense of impaired driving N.C.G.S. § 20–138.1, the definition of that offense was unchanged. We add that there is no constitutional right to be sentenced by a jury. *Roach v. Martin,* 757 F.2d 1463 (4th Cir.1985). See *McMillan,* 477 U.S. at ——, 106 S.Ct. at 2417.

We find nothing in N.C.G.S. § 20–179 to convince us that we should invalidate

---

**7.** The Court's remark on this point was that the contention that the increased penalty was in fact a part of the crime "... would have at least more superficial appeal if a finding of visible possession exposed ... [the defendants] to greater or additional punishment".... 54 U.S. L.W. at 4712.

**8.** N.C.G.S. § 20–138 provided in part that:

(a) It is unlawful and punishable as provided in G.S. 20–179 for any person who is under the influence of alcoholic beverages to drive or operate any vehicle upon any highway or any public vehicular area within this State.

(b) It is unlawful for any person to operate any vehicle upon any highway or any public vehicular area within this State when the amount of alcohol in such person's blood is 0.10 percent or more by weight and upon conviction if such conviction is a first convic-

tion under this section, he shall be eligible for consideration for limited driving privileges pursuant to the provisions of G.S. 20–179(b), provided that second and subsequent convictions under this section shall be punishable as provided in G.S. 20–179(a)(2) and (3).

**9.** N.C.G.S. § 20–139 provided in part that:

(a) It is unlawful and punishable as provided in G.S. 20–179 for any person who is an habitual user of any narcotic drug to drive or operate any vehicle upon any highway or public vehicular area within this State.

(b) It is unlawful and punishable as provided in G.S. 20–179 for any person, who is under the influence of any narcotic drug or who is under the influence of any other drug to such degree that his physical or mental faculties are appreciably impaired, to drive or operate a motor vehicle upon any highway or public vehicular area within this State.

North Carolina's intention that the presence of serious injury as a result of impaired driving be a sentencing factor to be considered by the court. We must heed the Court's warning that "we should hesitate to conclude that due process bars the State from pursuing its chosen course in the area defining crimes and prescribing penalties." *McMillan*, 477 U.S. at ——, 106 S.Ct. at 2416.

Because we conclude that the presence of bodily injury is a sentencing factor and not an element of the offense of driving while impaired, Field's constitutional rights under the Sixth and Fourteenth Amendments were not violated.

The judgment of the district court is accordingly

REVERSED.